IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PROCESS FACILITIES, INC., | : |
| Plaintiff, and | : |
| | : No. 03-cv-12409-JLT |
| JOHNSON MATTHEY INC., | : |
| Applicant for Intervention. | : |
| v. | : |
| SECURITY INSURANCE COMPANY OF HARTFORD, INC., | : |
| Defendant. | : |

## MOTION OF JOHNSON MATTHEY INC. TO INTERVENE AS A PLAINTIFF

Applicant for Intervention, Johnson Matthey Inc., respectfully requests leave to intervene as a plaintiff in this action pursuant to Federal Rule of Civil Procedure 24.

### I.   BACKGROUND

JM retained Plaintiff Process Facilities, Inc. and its related entities, PFI Construction Corporation, and PFI Design, P.C. (collectively, "PFI"), to perform certain professional services for JM's new bulk pharmaceutical manufacturing facility in West Deptford, New Jersey (the "Project"). See Affidavit of David A. Firn ("Firn Affidavit" or "Firn Aff.") ¶ 2.

On or about August 22, 2000, PFI obtained a Professional Liability Policy for Design Professionals, Policy Number AEE703097 (the "Policy"), from Defendant, Security Insurance Company of Hartford ("Security"). A true and correct copy of the Policy is attached as Exhibit A to the Firn Affidavit. The Policy, with endorsements, provided PFI with professional liability coverage of $10,000,000 per claim, and $10,000,000 in the aggregate. See Policy, Endorsement 37415 (Firn Aff., Ex. A). The Policy was effective from August 22, 2000, through August 22,

PH2\776696.1

2003. See Policy, Declarations Page (Firn Aff., Ex. A). JM required PFI to obtain and maintain professional liability insurance as a prerequisite to PFI performing any work for JM on the Project. Firn Aff. ¶ 3.

In the Policy, Security agreed to pay "sums in excess of the Deductible that [PFI] become[s] legally obligated to pay for CLAIMS arising out of [PFI's] PROFESSIONAL SERVICES ... ." Policy, at 2 (Firn Aff., Ex. A). During the course of the Project, PFI committed numerous errors, omissions, and negligent acts with respect to the Professional Services it provided for the Project. Accordingly, on or about August 20, 2003, JM's counsel sent PFI's counsel a letter claiming approximately $7 million in damages due to PFI's errors, omissions, and negligence. See Firn Aff. ¶ 4; Letter from Richard H. Lowe, Esquire (JM's counsel) to Edward Kutchin (PFI's counsel), dated August 20, 2003 (Firn Aff., Ex. B). In addition to requesting that PFI report JM's claim to Security, JM's counsel also sent a copy of its claim letter directly to Security on August 20, 2003. See Firn Aff. ¶ 4. JM believes that PFI immediately reported JM's claim to Security. Id.

On or about October 17, 2003, Security wrote to PFI denying coverage for JM's claims against PFI. See Firn Affidavit ¶ 5; Letter from Albert J. Rabasca (Claim Supervisor, Security) to Daniel Mariani (PFI), dated October 17, 2003 (Firn Aff., Ex. C). Security stated that it was denying coverage because: (1) PFI failed to provide Security with the required notice under the terms of the Policy; (2) JM's claim against PFI does not arise out of PFI's "Professional Services" as that term is defined in the Policy; and, (3) JM's claims for indemnification were not covered under the Policy. See Letter from Albert J. Rabasca (Claim Supervisor, Security) to Daniel Mariani (PFI), dated October 17, 2003 (Firn Aff., Ex. C).

On or about October 27, 2003, PFI's counsel wrote to Security, asserting that PFI provided adequate notice under the Policy and that all of JM's claims against PFI arose out of PFI's performance of "Professional Services," as that term is defined in the Policy. See Letter from Edward Kutchin, Esq. to Albert Rabasca, dated October 27, 2003 (Firn Aff., Ex. D). In his letter, PFI's counsel also asserted that Security's denial of coverage of JM's claim constitutes an unfair claim settlement practice in violation of both the Massachusetts Insurance Claims Practices Act (Mass.Gen. L. c. 176D) and the Massachusetts Consumer Protection Statute (Mass.Gen. L. c. 93A). See id. (Firn Aff., Ex. D).

As early as December 2002, PFI began asserting that it was having severe cash flow problems. See Firn Aff. ¶ 7. Consistent with PFI's assertions, at a meeting in Boston on June 5, 2003, PFI acknowledged for the first time that it was financially unstable, would not be able to withstand the financial impact of having to pay its subcontractors $1.1 million in funds that JM had paid PFI (specifically for PFI's subcontractors, but which PFI wrongfully kept for itself and refused JM's demands that PFI pay the funds to its subcontractors), and could not afford to make any payment to JM as a result of JM's claims to the extent that they went much beyond PFI's insurance deductible of $100,000. Id.

The nature and status of the dispute between PFI and Security has been a subject of a number of discussions between Edward Kutchin, counsel for PFI, and JM's counsel, David Firn. Firn Aff. ¶ 8. In the course of discussions between them, on at least two occasions (November 14 and 26, 2003), Mr. Kutchin has threatened that PFI might concede the insurance coverage issue with Security and file for bankruptcy protection. Id. PFI's counsel has also represented (on November 14, 2003) that PFI is in a precarious financial position, in that the amount PFI owes its bank is more than PFI's retained earnings and that security interests are attached to

PH2\776696.1

3

virtually all of PFI's assets. Id. Further, he has represented that PFI cannot afford to continue funding litigation against its subcontractors on the Project, let alone JM and Security, PFI's insurer. Id. Although JM has not yet had an opportunity to conduct discovery of PFI's financial situation, JM expects that discovery will confirm that PFI's financial situation is precarious and deteriorating significantly.

## II. JM Is Entitled to Intervene "as of right" Pursuant to FRCP 24(a).

JM is entitled to intervene in this action pursuant to FRCP 24(a).

First, JM's Motion to Intervene is timely in that this action is in its initial stages and Defendant, Security, has not yet responded to PFI's Complaint.

Second, as a claimant under the Policy, JM has an interest relating to the property or transaction which is the subject of the action.

Third, disposition of this action may impair or impede JM's ability to protect its interest, because if this Court determines that JM's claims are not covered under the Policy, JM will likely be without a remedy on its claims against PFI, which approximate $7,000,000.

Fourth, JM's interest is not adequately represented by Plaintiff, PFI, because PFI has represented that it is financially unstable and threatened to concede the insurance coverage issue with Security and file for bankruptcy protection. Further, PFI has represented that it cannot continue to fund this litigation, as well as other litigation in which it is currently involved.

## III. JM Should be Permitted to Intervene Pursuant to FRCP 24(b).

Alternatively, JM should be permitted to intervene in this action.

First, for the reasons set forth above, JM's motion to intervene is timely.

Second, JM's claim and the claim of Plaintiff, PFI necessarily share a common questions of law or fact (namely, whether JM's claims against PFI are covered under the Policy).

4

PH2\776696.1

Third, JM's intervention will not unduly delay or prejudice the adjudication of the rights of the original parties, because JM has intervened in the early stages of this litigation and its proposed Complaint does not assert any claims not already asserted by Plaintiff, PFI.

The grounds for this Motion are set forth more fully in the accompanying Memorandum in Support of Johnson Matthey Inc.'s Motion to Intervene.

Pursuant to Federal Rule of Civil Procedure 24(c), a proposed Complaint (without exhibits) setting forth JM's claims is attached to this Motion as **Exhibit A**.

WHEREFORE, Applicant for Intervention, Johnson Matthey Inc., respectfully request leave to intervene as a plaintiff in this action pursuant to Federal Rule of Civil Procedure 24.

> Respectfully submitted,
> Johnson Matthey Inc.,
> By its attorneys,
>
> _____
> Michael R. Gottfried, BBO #542156
> Eric B. Goldberg, BBO #564398
> **DUANE MORRIS LLP**
> 470 Atlantic Avenue, Suite 500
> Boston, MA 02210
> (617) 289-9255
>
> Robert A. Prentice, BBO #405600
> **DUANE MORRIS LLP**
> One Liberty Place
> 1650 Market Street
> Philadelphia, PA 19103-7396
> (215) 979-1130

Dated: February 6, 2004