SCANNED

DATE 2·9·04

CMG

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| PROCESS FACILITIES, INC., | : | |
| | : | |
| **Plaintiff, and** | : | |
| | : | No.  03-cv-12409-JLT |
| JOHNSON MATTHEY INC., | : | |
| Applicant for Intervention. | : | |
| | : | |
| v. | : | |
| | : | |
| SECURITY INSURANCE COMPANY | : | |
| OF HARTFORD, INC., | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

## MEMORANDUM IN SUPPORT OF JOHNSON MATTHEY INC.'S MOTION TO INTERVENE AS A PLAINTIFF

Applicant for Intervention, Johnson Matthey Inc. ("JM"), by its undersigned counsel, Duane Morris LLP, respectfully submits this brief in support of its motion to intervene as a plaintiff in this action.

## I.    FACTUAL BACKGROUND

JM retained Plaintiff Process Facilities, Inc. and its related entities, PFI Construction Corporation, and PFI Design, P.C. (collectively, "PFI"), to perform the following professional services for JM's new bulk pharmaceutical manufacturing facility in West Deptford, New Jersey (the "Project"):  by Purchase Order No. 52992, dated November 30, 1999, and Change Orders thereto, to design the Project; by Purchase Order No. 55375, dated June 28, 2000, and Change Orders thereto, to perform procurement services for the Project; by Purchase Order No. 56310, dated December 21, 2000, and Change Orders thereto, to perform construction management services for the Project; and by Purchase Order No. 58019, dated October 12, 2001, and Change

Orders thereto, to perform procurement services for the thermal oxidizer portion of the Project. See Affidavit of David A. Firn ("Firn Affidavit" or "Firn Aff.") ¶ 2.

On or about August 22, 2000, PFI obtained a Professional Liability Policy for Design Professionals, Policy Number AEE703097 (the "Policy"), from Plaintiff, Security Insurance Company of Hartford ("Security"). A true and correct copy of the Policy is attached as Exhibit A to the Firn Affidavit. The Policy, with endorsements, provided PFI with professional liability coverage of $10,000,000 per claim, and $10,000,000 in the aggregate. See Policy, Endorsement 37415 (Firn Aff., Ex. A). The Policy was effective from August 22, 2000, through August 22, 2003. See Policy, Declarations Page (Firn Aff., Ex. A). JM required PFI to obtain and maintain professional liability insurance as a prerequisite to PFI performing any work for JM on the Project. Firn Aff. ¶ 3.

In the Policy, Security agreed to pay "sums in excess of the Deductible that [PFI] become[s] legally obligated to pay for CLAIMS arising out of [PFI's] PROFESSIONAL SERVICES ... ." Policy, at 2 (Firn Aff., Ex. A). The Policy defines a CLAIM, in relevant part, as "a demand against you [PFI], or the filing of a suit or the initiation of an arbitration proceeding naming you [PFI], that seeks damages for an alleged error, omission, negligent act, or 'personal injury' arising out of your [PFI's] PROFESSIONAL SERVICES ... ." Policy, at 7 (Firn Aff., Ex. A). The Policy broadly defines "PROFESSIONAL SERVICES" to include:

1. the performance of studies, surveys, assessments, evaluations, consultations, inspections, observations, scheduling, sequencing, or training; or

2. the preparation of reports, opinions, recommendations, permit applications, maps, drawings, designs, specifications, manuals, instructions, computer programs for designed systems, or change orders; or

3.      construction management, quality control, monitoring, testing, or sampling necessary to perform any of the services listed above; or

4.      the supplying of furnishings as part of interior design services.

See Policy, at 8 (Firn Aff., Ex. A).

During the course of the Project, PFI committed numerous errors, omissions, and negligent acts with respect to the Professional Services it provided for the Project.  Accordingly, on or about August 20, 2003, JM's counsel sent PFI's counsel a letter claiming approximately $7 million in damages due to PFI's errors, omissions, and negligence.  See Firn Aff. ¶ 4; Letter from Richard H. Lowe, Esquire (JM's counsel) to Edward Kutchin (PFI's counsel), dated August 20, 2003 (Firn Aff., Ex. B).  In addition to requesting that PFI report JM's claim to Security, JM's counsel also sent a copy of its claim letter directly to Security on August 20, 2003.  See Firn Aff. ¶ 4. JM believes that PFI immediately reported JM's claim to Security.  Id.

The Policy applies to CLAIMS "first made against [the insured] during a POLICY YEAR within the policy period shown in the Declarations and first reported to [Security] within sixty (60) days after the end of that POLICY YEAR." Policy, at 6, 8 (Firn Aff., Ex. A).  The Policy defines a POLICY YEAR, in relevant part, as "each consecutive twelve (12) months of the policy period beginning on the effective date shown in the Declarations." Policy, at 9 (Firn Aff., Ex. A).  The policy period shown on the Declarations page is August 22, 2000, through August 22, 2003, and the effective date is August 22, 2000.  See Policy, Declarations Page (Firn Aff., Ex. A).  As set forth above, JM sent PFI and Security notice of its claim on August 20, 2003, within the policy period, and, based upon JM's information and belief, PFI immediately reported JM's claim to Security.  Thus, JM's claim was timely reported to Security.

On or about October 17, 2003, Security wrote to PFI denying coverage for JM's claims against PFI.  See Firn Affidavit ¶ 5; Letter from Albert J. Rabasca (Claim Supervisor, Security)

to Daniel Mariani (PFI), dated October 17, 2003 (Firm Aff., Ex. C). Security stated that it was

denying coverage because: (1) PFI failed to provide Security with the required notice under the

terms of the Policy; (2) JM's claim against PFI does not arise out of PFI's "Professional

Services" as that term is defined in the Policy; and, (3) JM's claims for indemnification were not

covered under the Policy. See Letter from Albert J. Rabasca (Claim Supervisor, Security) to

Daniel Mariani (PFI), dated October 17, 2003 (Firm Aff., Ex. C).

On or about October 27, 2003, PFI's counsel wrote to Security, asserting that PFI

provided adequate notice under the Policy and that all of JM's claims against PFI arose out of

PFI's performance of "Professional Services," as that term is defined in the Policy. See Letter

from Edward Kutchin, Esq. to Albert Rabasca, dated October 27, 2003 (Firm Aff., Ex. D). In his

letter, PFI's counsel also asserted that Security's denial of coverage of JM's claim constitutes an

unfair claim settlement practice in violation of both the Massachusetts Insurance Claims

Practices Act (Mass.Gen. L. c. 176D) and the Massachusetts Consumer Protection Statute

(Mass.Gen.L. c. 93A). See id. (Firm Aff., Ex. D).

As early as December 2002, PFI began asserting that it was having severe cash flow

problems. See Firm Aff. ¶ 7. Consistent with PFI's assertions, at a meeting in Boston on June 5,

2003, PFI acknowledged for the first time that it was financially unstable, would not be able to

withstand the financial impact of having to pay its subcontractors $1.1 million in funds that JM

had paid PFI (specifically for PFI's subcontractors, but which PFI wrongfully kept for itself and

refused JM's demands that PFI pay the funds to its subcontractors), and could not afford to make

any payment to JM as a result of JM's claims to the extent that they went much beyond PFI's

insurance deductible of $100,000. Id.

The nature and status of the dispute between PFI and Security has been a subject of a number of discussions between Edward Kutchin, counsel for PFI, and JM's counsel, David Firn. Firn Aff. ¶ 8. In the course of discussions between them, on at least two occasions (November 14 and 26, 2003), Mr. Kutchin has threatened that PFI might concede the insurance coverage issue with Security and file for bankruptcy protection. Id. PFI's counsel has also represented (on November 14, 2003) that PFI is in a precarious financial position, in that the amount PFI owes its bank is more than PFI's retained earnings and that security interests are attached to virtually all of PFI's assets. Id. Further, he has represented that PFI cannot afford to continue funding litigation against its subcontractors on the Project, let alone JM and Security, PFI's insurer. Id. Although JM has not yet had an opportunity to conduct discovery of PFI's financial situation, JM expects that discovery will confirm that PFI's financial situation is precarious and deteriorating significantly.

## II.    PROCEDURAL BACKGROUND

Defendant Security filed a declaratory judgment action in the Superior Court of New Jersey on October 16, 2003, seeking a declaration that it has no obligation to defend or indemnify PFI for the claims JM asserts against PFI (the "New Jersey Declaratory Judgment Action"). PFI removed that action to the United States District Court for the District of New Jersey Court on November 17, 2003. As of February 2, 2004, PFI has yet to respond to Security's Complaint in the New Jersey Declaratory Judgment Action. An initial conference in that action is set for April 6, 2004.

In response to Security's initiation of the New Jersey Declaratory Judgment Action, on October 28, 2003, PFI filed a complaint against Security in the Superior Court of Massachusetts, Suffolk County (the "Massachusetts Declaratory Judgment Action"), alleging that: (1) Security breached its obligations under the Policy; (2) Security violated the Massachusetts Insurance

Claims Practices Act and Consumer Protection Statute; (3) PFI is entitled to specific performance by Security of its obligations under the Policy; (4) Security breached the covenant of good faith and fair dealing by denying coverage; and (5) PFI is entitled to a declaratory judgment determining the rights and obligations of PFI and Security under the Policy. A copy of the Complaint PFI filed in the Superior Court of Massachusetts is attached as Exhibit E to the Firn Affidavit.

On or about December 1, 2003, Security removed the Massachusetts Declaratory Judgment Action to this Court. On or about December 3, 2003, the parties to this action filed a joint motion for an extension of time to December 19, 2003, for Security to respond to PFI's Complaint. By Order entered December 9, 2003, this Court granted that motion. On or about December 19, 2003, PFI and Security filed another Joint Motion for an extension of time. By Order entered January 7, 2004, this Court again granted the parties' joint motion for an extension of time. On January 16, 2004, the parties filed yet another Joint Motion for a further extension of time until February 13, 2004, for Security to respond to PFI's complaint. That motion has yet to be decided. Thus, Security has yet to respond to PFI's Complaint in this action.

To date, no discovery has occurred in either the New Jersey Declaratory Judgment Action or the Massachusetts Declaratory Judgment Action. No trial date has been set in either action.

## III.   ARGUMENT

### A.   JM Has the Right to Intervene in This Action

#### 1.   Rule 24(a) permits a party to intervene as of right.

Federal Rule of Civil Procedure 24(a), entitled "Intervention of Right," provides, in

relevant part:

> Upon timely application anyone shall be permitted to intervene in an action ... (2)
> when the applicant claims an interest relating to the property or transaction which
> is the subject of the action and the applicant is so situated that the disposition of
> the action may as a practical matter impair or impede the applicant's ability to
> protect that interest, unless the applicant's interest is adequately represented by
> existing parties.

Fed. R. Civ. P. 24(a).

The United States Court of Appeals for the First Circuit has distilled Rule 24(a)(2) into

four requirements that must be met in order for an applicant to intervene as of right: "1. [t]he

application must be timely ... ; 2. [t]he applicant must claim an interest relating to the property

or transaction which is the subject of the action; 3. [d]isposition of the action may, as a practical

matter, impair or impede th[e] applicant's ability to protect the interest; and 4. [t]he applicant

must show that the interest will not be adequately represented by existing parties." Conservation

Law Found. v. Mosbacher, 966 F.2d 39, 41 (1st Cir. 1992) (citing Travelers Indem. Co. v.

Dingwell, 884 F.2d 629, 637 (1st Cir. 1989)).

#### 2.   JM satisfies the requirements of Rule 24(a).

##### a.   JM's application for intervention is timely.

According to the Supreme Court, "[t]imeliness is to be determined from all the

circumstances." NAACP v. New York, 413 U.S. 345, 365-66. The First Circuit has identified

four factors to be considered in determining whether a motion to intervene is timely: (1) the

length of time the applicant knew or should have known of its interest before petitioning to

intervene; (2) prejudice to existing parties due to an applicant's failure to petition promptly; (3) prejudice to the applicant if not allowed to intervene; and (4) existence of unusual circumstances militating for or against intervention. Culbreath v. Dukakis, 630 F.2d 15, 20 (1st Cir. 1980) (citing Stallworth v. Monsanto Co., 558 F.2d 257, 264 (5th Cir. 1977)).

According to the standard set forth above and looking at the totality of the circumstances, JM's application to intervene is undeniably timely. Regarding the first factor to be considered—the length of time the applicant knew or should have known of its interest before petitioning to intervene—this factor favors granting JM's motion, because JM has moved to intervene early in this action. As described above, this litigation has not progressed beyond its initial stages. PFI's Complaint, originally filed in the Superior Court of Massachusetts on October 28, 2003, was removed to this Court on December 1, 2003. Security has yet to respond to PFI's Complaint, and the parties have not yet initiated any discovery.

Regarding the second factor to be considered—possible prejudice to the existing parties due to an applicant's failure to petition promptly— because JM has promptly moved to intervene in this matter, this factor also favors granting JM's motion.

Regarding the third factor—prejudice to the applicant if not allowed to intervene—this factor weighs heavily in favor of JM's right to intervene, because, as described in greater detail below, precluding JM from intervening in this action will likely leave JM without a remedy on a claim of approximately $7,000,000 against PFI.

Regarding the fourth factor to be considered—the existence of unusual circumstances militating for or against intervention—there are no unusual circumstances militating against intervention and the circumstances set forth below militate in favor of intervention.

**b.    JM has a demonstrated interest in the property or transaction that forms the basis for this action.**

The First Circuit has not yet addressed the issue of whether a claimant under an insurance policy, who has not yet reduced its claim against the insured to a judgment, has a sufficient interest to intervene in a declaratory judgment action between an insurer and its insured.

In the only case directly addressing the precise issue before this Court—whether an owner has a sufficient interest to intervene as of right in a declaratory judgment action between the design firm hired by the owner and the design firm's insurer—the Seventh Circuit held that the owner had a sufficient interest to intervene as of right in the action. See Security Ins. Co. v. Schipporeit, Inc., 69 F.3d 1377, 1379-82 (7th Cir. 1995). In Schipporeit, a claimant owner, like JM here, sought to intervene in a declaratory judgment action initiated by Security, coincidentally the Plaintiff here, seeking a declaration that the owner's claims against a design professional, Schipporeit, Inc., to whom Security had issued a professional liability policy, were not covered under the policy. Id. at 1379. This is precisely the factual scenario in this case.

The Schipporeit court addressed whether the owner in that case had a sufficient interest to intervene in the litigation. Schipporeit, 69 F.3d at 1380-81. In concluding that it did, the court found that "Security opposed [the owner's petition to intervene] because it wanted a quick, unopposed adjudication that it had no obligation to defend or indemnify Schipporeit." Id. at 1381. This is precisely what Security seeks here. The Seventh Circuit rejected Security's argument that the district court should not have permitted the owner to intervene, and, after remarking that Security "wanted to play the Washington Generals and get out of town with a quick win," held that "[t]he district court wisely allowed a more worthy opponent to get into and

onto the court."[1] Id. This Court should follow the Seventh Circuit's reasoning and find that JM has a sufficient interest to intervene in this action.

In addition to the Seventh Circuit's decision in Schipporeit, substantial authority from within this Circuit and other jurisdictions demonstrates that JM has a sufficient interest to intervene in this action. The only court from within this Circuit, as well as the only two Circuit Courts to have addressed the issue in written opinions, along with numerous courts outside this Circuit have concluded that a claimant, who has not yet reduced its claim against the insured to a judgment, has a sufficient interest to intervene as of right under Rule 24(a). See New Hampshire Ins. Co. v. Greaves, 110 F.R.D. 549 (D.R.I. 1986). See also Schipporeit, Inc., 69 F.3d at 1379-82; Teague v. Bakker, 931 F.2d 259 (4th Cir. 1991); TIG Specialty Ins. Co., 208 F.R.D. 336; General Ins. Co. v. Rhoades, 196 F.R.D. 620, 622-25 (D.N.M. 2000); Indiana Ins. Co. v. Midwest Maint., No. C-3-99-351, 2000 U.S. Dist. LEXIS 6450 (S.D. Ohio Jan. 7, 2000); LMI Ins. Co., 1998 U.S. Dist. LEXIS 15387; Coregis Ins. Co. v. Bell, No. 96-2502, 1998 U.S. Dist. LEXIS 2308 (E.D. La. Mar. 2, 1998); T.H.E. Ins. Co. v. E & H Transport, Inc., No. 7:97-CV-67-BR(2), 1997 U.S. Dist. LEXIS 14533 (E.D.N.C. Aug. 19, 1997); Continental Ins. Co. v. Law Office of Thomas J. Walker, Jr., 171 F.R.D. 183, 184-86 (D. Md. 1997); St. Paul Fire & Marine Ins. Co. v. Summit-Warren Indus. Co., 143 F.R.D. 129 (N.D. Ohio 1992);  Hartford Accident and Indem. Co. v. Crider, 58 F.R.D. 15 (N.D. Ill. 1973).  See also Jamison v. Miracle Mile Rambler, Inc., 536 F.2d 560 (3d Cir. 1976) (court "register[ed its] ... disturbance at [the] fact"

---

[1]    In Schipporeit, the insured, who had no significant assets except for the policy, failed to appear in the declaratory judgment action. See Schipporeit, 69 F.3d at 1380. Obviously, here PFI has defended itself to date. But enough warning signs are present regarding PFI's financial position and ability to vigorously defend this action to heed the concerns the court raised in Schipporeit. See Firm Aff. ¶¶ 7-8.

that claimant under an insurance policy made no effort to intervene in excess judgment action between insured and insurer, and parties made no effort to join claimant).

The opinion of the United States District Court for the District of Rhode Island in Greaves, one of the leading cases addressing the issue before this Court, demonstrates that JM has a sufficient interest to intervene in this action as of right. In Greaves, the court recognized that "[t]here is nothing in the wording or history of Rule 24 which indicates intent to exclude would be intervenors whose interest in [a] pending litigation is not yet vested." Greaves, 110 F.R.D. at 552. See also Teague, 931 F.2d at 261 (expressly adopting the reasoning in Greaves); Law Office of Thomas J. Walker, Jr., 171 F.R.D. at 186 (citing Teague and stating that "the appropriateness of intervention is not contingent upon prior resolution of the underlying claim"); St. Paul, 143 F.R.D. at 134 (quoting Greaves with approval). The Greaves court also recognized that prohibiting a claimant, like JM, from intervening in a declaratory judgment action between an insurer and its insured is "inappropriate and unjust," where the claimant is undeniably interested in the litigation and its intervention "will create little or no interference with or complication of the litigation." Greaves, 110 F.R.D. at 552 (cited with approval in Teague, 931 F.2d at 261, and St. Paul, 143 F.R.D. at 134).

In addition, according to the reasoning of the court in Greaves, allowing JM to intervene in this action promotes judicial economy, because, if JM obtains a judgment against PFI that PFI is unable satisfy, JM will be forced to bring an action against Security to collect on any judgment and that suit will involve precisely the same coverage issue being litigated in this action. See Greaves, 110 F.R.D. at 552; See, also Teague, 931 F.2d at 261; Rhoades, 196 F.R.D. at 624-25; St. Paul, 143 F.R.D. at 134; Crider, 58 F.R.D. at 18. Furthermore, resolution of this action in Security's favor might prejudice a future action by JM against Security to collect on a judgment

against PFI. Id. Forcing Security to face a stronger and more vigorous opposition by allowing JM to intervene is consistent with "our notions of fairness and justice" and will aid the Court and the judicial process in its role of "reach[ing] a just and equitable resolution based on the facts." Greaves, 110 F.R.D. at 552 (cited with approval in Teague, 931 F.2d at 261, and St. Paul, 143 F.R.D. at 134). See also Security, 69 F.3d at 1381 (noting that Security "wanted to play the Washington Generals and get out of town with a quick win" but "the district court wisely allowed a more worthy opponent to get into and onto the court").

Finally, the Greaves court and numerous other courts have concluded that where there is some question regarding the insured's ability to satisfy a judgment against it, a claimant under the insurance policy has a sufficient interest to intervene in a declaratory judgment action between the insurer and its insured. See Greaves, 110 F.R.D. at 552 ("If the Taylors are not permitted to intervene in this action, they will likely find themselves without an adequate remedy."). See also Teague, 931 F.2d at 261 (party had right to intervene where the existence and amount of the insured's assets was questionable); Law Office of Thomas J. Walker, Jr., 171 F.R.D. at 185 (propose intervenors had "a clear interest in the insurance policy" where the insured had assets far below the amount claimed by the claimants); St. Paul, 143 F.R.D. at 134 ("If the insurer prevails in the instant action ... the proposed intervenor may be left with a hollow judgment against a defunct corporation."). Thus, according to the reasoning of these decisions, JM has a sufficient interest to intervene as of right in this action, because PFI has represented to JM that PFI is in a precarious financial position and would not be able to satisfy a potential judgment against it for the amount claimed by JM. See Firn Affidavit ¶¶ 7-8.

In addition to the decisions in Schipporeit and Greaves, two recent district court cases have specifically addressed the issue of whether a claimant, who has not yet reduced its claim

12

against the insured to a judgment, has a right to intervene in a declaratory judgment action

between the insurer and its insured. In both cases, the courts held that such a claimant has a right

to intervene because its interest in the insurance policy constitutes "an interest in a 'specific

fund' -- the insurance proceeds ... ." LMI Ins. Co. v. Precision Millwork Co., No. 2:98-CV-2-

BO(1), 1998 U.S. Dist. LEXIS 15387, at *4 (E.D.N.C. July 28, 1998). See also TIG Specialty

Ins. Co. v. Financial Web.com, Inc., 208 F.R.D. 336, 338 (M.D. Fla. 2002). Finally, JM has a

sufficient interest to intervene as of right in this action, because JM required PFI to obtain and

maintain professional liability insurance as a prerequisite to PFI performing any work for JM,

and this action is a direct result of JM's submission of its claim to PFI. See Firn Aff. ¶¶ 3-5.

Notwithstanding the substantial authority set forth above, some federal courts have held

that a claimant under an insurance policy must reduce its claim against the insured to a judgment

before it may intervene in a declaratory judgment action between an insurer and its insured.[2]

The courts in those cases failed to consider some important factors.

First, those courts fail to recognize that in a situation such as this, where the insured is in

a precarious and deteriorating financial position and likely will not be able to satisfy a judgment

against it in the amount claimed by the claimant, (see Firn Aff. ¶¶ 7-8) precluding the claimant

from intervening in the declaratory judgment action might prevent the claimant from obtaining

any relief on its claim, if the declaratory judgment action is decided in the insurer's favor. See,

e.g., Teague, 931 F.2d at 261 (granting motion to intervene, where if the insurer prevailed in the

---

[2]    See, e.g., Redland Ins. Co. v. Chillingsworth Venture, Ltd., 171 F.R.D. 206 (N.D. Ohio
1997); Midwest Employers Cas. Co. v. East Alabama Health Care, 170 F.R.D. 195 (M.D.
Ala. 1996); Independent Petrochemical Corp. v. Aetna Cas. & Surety Co., 105 F.R.D.
106 (D.D.C. 1985), aff'd without opinion, 784 F.2d 1131 (D.C. Cir. 1986); Liberty Mut.
Ins. Co. v. Pacific Indem. Co., 76 F.R.D. 656 (W.D. Pa. 1977).

declaratory judgment action, the proposed intervenor would have to satisfy any judgment against the insured from other assets of the insured, and the amount of such assets was questionable); Rhoades, 196 F.R.D. at 624-25 ("Where the claimant's only real hope of recovery rests in establishing the existence of insurance coverage, courts have a strong tendency to grant the claimant's motion to intervene." (citing cases)); St. Paul, 143 F.R.D. at 134 (if insurer prevailed in declaratory judgment action, claimant's only recourse would be against the insureds, a defunct corporation and related persons); Greaves, 110 F.R.D. at 552 (proposed intervenors would likely be without an adequate remedy if not permitted to intervene, because their only recourse would be against the insured, who was without sufficient assets from which to satisfy any substantial judgment); Crider, 58 F.R.D. at 18 (resolution of the declaratory judgment action in the insurer's favor might prejudice a future action by the claimant against the insurer).

Second, these courts fail to recognize that allowing the claimant to intervene promotes judicial efficiency, because, if the claimant obtains a judgment against the insured that the insured is unable satisfy, the claimant will be forced to bring an action against the insurer to collect on any judgment, and that suit will involve precisely the same coverage issue being litigated in the declaratory judgment action. See Crider, 58 F.R.D. at 18.

Finally, these courts fail to appreciate that forcing the insurer to face a stronger and more vigorous opposition furthers the goal of "reach[ing] a just and equitable resolution [of legal disputes] based on the[ir] facts." Greaves, 110 F.R.D. at 552.

### c.    JM's interest may be affected or impaired by the disposition of this action.

Having determined that JM has a sufficient interest to intervene in this action, the next and related question is whether JM's interest may be affected or impaired by the disposition of this action. According to the authority set forth above, the answer is yes.

As the court recognized in Greaves, where there is some question as to the insured's ability to satisfy a judgment against it in the amount claimed by the claimant, the claimant possesses a sufficient "interest" that may be affected or impaired by the disposition of the declaratory judgment action between the insurer and the insured. See Greaves, 110 F.R.D. at 552. See, also Teague, 931 F.2d at 261; Law Office of Thomas J. Walker, Jr., 171 F.R.D. at 185; St. Paul, 143 F.R.D. at 134; General Ins. Co., 196 F.R.D. at 624-25.

This is precisely the situation in this case. As set forth above and in the accompanying Firm Affidavit, PFI has represented to JM that PFI is in a precarious financial position and would be unable to satisfy a judgment against it in the amount claimed by JM. See Firm Aff. ¶¶ 7-8. Thus, based upon the statements made by PFI's counsel regarding PFI's unstable and precarious financial status, it is unlikely that PFI has the financial ability to protect adequately JM's interests in this litigation. Finally, JM's interest in this action may be impaired or impeded, because, as explained above, resolution of this action in Security's favor might prejudice a future action by JM against Security. See, e.g., Teague, 931 F.2d at 261; Rhoades, 196 F.R.D. at 624-25; St. Paul, 143 F.R.D. at 134; Greaves, 110 F.R.D. at 552; Crider, 58 F.R.D. at 18. Thus, according to the case law set forth above, JM's ability to recover the full amount of its damages would be severely impaired or impeded if this action reaches a final disposition without JM's presence.

### d.    JM's interest is not adequately represented by PFI.

Although the applicant for intervention has the burden of showing that the representation of its interest is inadequate, "the requirement of the Rule is satisfied if the applicant shows that the representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." Trbovich v. United Mine Workers, 404 U.S. 528, 538 n. 10 (1972). See also Conservation Law Found., 966 F.2d at 44 ("[I]ntervenor need only show that

representation may be inadequate, not that it is inadequate."). Moreover, "[i]ntervenors should be allowed to intervene unless it is clear that [the existing party] will provide adequate representation." TIG Specialty Ins. Co., 208 F.R.D. at 339 (internal quotation and citations omitted).

JM easily satisfies its "minimal" burden of showing that PFI cannot adequately represent JM's interest in this litigation. As set forth in the Firm Affidavit, PFI's counsel, on at least two occasions, has threatened to concede the insurance coverage issue that is the subject of this litigation to Security and file for bankruptcy. Firn Aff. ¶ 8. Having threatened to concede the coverage issue to Security and file for bankruptcy, JM cannot possibly permit PFI to represent JM's interest in this litigation. See, e.g., Greaves, 110 F.R.D. at 553 (finding claimants not adequately represented by insured where the insured lacked the financial means and motivation to vigorously defend the declaratory judgment action and retained the option of filing for bankruptcy if faced with liability for a substantial judgment); Crider, 58 F.R.D. at 18-19 (holding that claimant's interest was not adequately represented by the insured because claimant and the insured were adverse in the related action between the claimant and insured to establish the insured's liability). Finally, the fact that PFI has represented that it does not have sufficient assets to fund this litigation against Security along with all of the other litigation in which it is currently involved further demonstrates that PFI cannot adequately represent JM's interest in this action. See Firn Aff. ¶ 8; Law Office of Thomas J. Walker, Jr., 171 F.R.D. at 185 (claimant's interest not adequately represented where insured has "limited resources").

**B.     JM Also Satisfies the Requirements for Permissive Intervention Pursuant to FRCP 24(b).**

Federal Rule of Civil Procedure 24(b), entitled "Permissive Intervention," provides in relevant part:

> Upon timely application anyone may be permitted to intervene in an action ... (2) when an applicant's claim or defense and the main action have a question of law or fact in common. ... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Fed. R. Civ. P. 24(b). Thus, pursuant to Rule 24(b), JM may be permitted to intervene in this action if its: (1) motion to intervene is timely; (2) claims against Security share common questions of law and fact with PFI's claims against Security; and (3) intervention in this action would not unduly delay or prejudice the rights of PFI or Security. Further, in addition to the specific requirements contained in Rule 24(b), there must also be an independent ground for federal jurisdiction over JM's claims against Security. JM has satisfied each of the requirements for permissive intervention.

First, for the reasons set forth above (see supra Part III.A.2.a), JM's motion to intervene is timely.

Second, JM's claims and this action undeniably have questions of law and fact in common. JM's claim is that the damages it has suffered are covered under the Policy, because they are the result of errors, omissions, or negligence in the "PROFESSIONAL SERVICES," as that term is defined in the Policy, provided by PFI for the Project. This is precisely the same question of law and fact that will be litigated in this declaratory judgment action. Indeed, it was JM's notice of claim dated August 20, 2003, that prompted Security initiate the New Jersey Declaratory Judgment Action, which then prompted PFI to initiate this lawsuit. Further,

Security's position in this lawsuit is focused directly against JM. Thus, JM's claim and this action necessarily have questions of law and fact in common.

Third, JM's proposed intervention will not unduly delay or prejudice the adjudication of the rights of the original parties to this action. As mentioned above, this litigation has not progressed beyond its initial stages, in that as of February 2, 2004, Security has yet to respond to PFI's Complaint. Furthermore, the fact that JM's proposed Complaint does not assert any claims not already asserted against Security by PFI further demonstrates that Security will not be prejudiced by JM's intervention in this matter. See JM's Proposed Complaint (Exhibit A to JM's Motion to Intervene); PFI Complaint (Firm Aff., Ex. E). For the reasons set forth above, JM's intervention should not delay or prejudice the rights of the parties at all, let alone cause them undue delay or prejudice.

Finally, there is an independent ground for federal jurisdiction over JM's claims against Security. JM is a Pennsylvania corporation with its principal place of business in Wayne, Pennsylvania. Defendant, Security, is an insurance company incorporated under the laws of the State of Connecticut, with its principal place of business in Farmingdale, Connecticut. Thus, there is complete diversity between the parties. Furthermore, the amount in controversy between the parties is approximately $7,000,000, well in excess of the statutory requirement for diversity jurisdiction. Therefore, there is an independent basis for federal jurisdiction over the dispute between JM and Security.

In addition to the fact that JM has satisfied all of the statutory criteria for permissive intervention, JM's request to intervene in this case also finds support in the case law. See, e.g., Security, 69 F.3d at 1381 (permissive intervention for claimant under an insurance policy would have been appropriate even if district court's conclusion that intervention as of right was

18

appropriate was erroneous); Continental Cas. Co. v. SSM Group, Inc., 1995 U.S Dist. LEXIS

9739 (E.D. Pa. July 13, 1995); St. Paul, 143 F.R.D. at 136 (claimant seeking intervention as of

right and permissive intervention "clearly me[t] the less-than-stringent requirements for

permissive intervention"). In Continental Casualty Co., claimants under an insurance policy

moved to intervene as of right and permissively. Although the court denied the claimants'

motion to intervene as of right, the court held that the claimants satisfied the requirements for

permissive intervention pursuant to Rule 24(b). Id. at *14-*19. The court began its analysis by

addressing the question of whether the claimant's defense to the insurer's declaratory judgment

action shared a common question of law or fact with the main action. Id. at *14-*18. It first

noted that "[p]ermissive intervention has universally been left to the sound discretion of the

district court" and that "the words claim or defense have not been read in a technical sense." Id.

at *14-*15 (internal quotation and citation omitted). Significantly, the court recognized that

"Rule 24(b) 'plainly dispenses with the requirement that the intervenor shall have a direct

personal or pecuniary interest in the subject of the litigation.'" Id. at *15 (quoting S.E.C. v.

United States Realty and Improvement Co., 310 U.S. 434, 459 (1940)).

Having established the legal framework for its analysis, the court then concluded that the

proposed intervenors' defenses shared questions of law and fact in common with the declaratory

judgment action for the simple reason that their argument that the insured's losses were covered

under the policy was precisely the issue being litigated between the insurer and its insured. Id. at

*16. The court noted that the fact that the proposed intervenors' motivation for intervening was

purely economic was irrelevant. Id. at *16 (citations omitted). In concluding its discussion of

the common question of law or fact issue, the court noted that the claimants in that action, just

like JM here, had more than a "general interest" in the action because their claims "gave rise to"

the declaratory judgment action and the claimants sought to ensure that they would be able to collect a judgment against the insured. Id. at *17-*18. Finally, the court found that the claimants' presence in the declaratory judgment action, as JM's will here, might illuminate certain issues in the action, because their claims formed the basis for the action. Id. at *18. On the issue of whether the claimants' presence would cause undue delay or prejudice, the court noted that "additional parties always take additional time," but found that because the claimants brought "no extrinsic or collateral issues to the litigation" and moved for intervention at an early stage in the proceedings, their entrance into the litigation would not cause undue delay or prejudice. Id. at *18-*19 (internal quotation and citation omitted).

## IV.    CONCLUSION

For the reasons set forth above, this Court should grant JM's motion to intervene as a plaintiff in this action.

Respectfully submitted,
Johnson Matthey Inc.,
By its attorneys,

Michael R. Gottfried, BBO #542156
Eric B. Goldberg, BBO #564398
**DUANE MORRIS LLP**
470 Atlantic Avenue, Suite 500
Boston, MA 02210
(617) 289-9255

Robert A. Prentice, BBO #405600
**DUANE MORRIS LLP**
One Liberty Place
1650 Market Street
Philadelphia, PA 19103-7396
(215) 979-1130

Dated:  February 6, 2004

**CERTIFICATE OF SERVICE**

I, Eric B. Goldberg, hereby certify that on February 6, 2004, I caused a true copy of the

foregoing Memorandum in Support of Johnson Matthey Inc.'s Motion to Intervene as a Plaintiff

to be served by hand upon the following attorneys of record.

Edward Kutchin, Esq.
Kutchin & Rufo, P.C.
155 Federal Street
17th Floor
Boston MA 02110-1727
*Attorneys for Plaintiff*
*Process Facilities, Inc.*

Harvey Nosowitz, Esq.
Palmer & Dodge, LLP
111 Huntington Avenue
Boston, MA 02199
*Attorneys for Defendant*
*Security Insurance Company of Hartford, Inc.*

Eric B. Goldberg

BOS\96916.1