IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PROCESS FACILITIES, INC., : <br> : <br> Plaintiff, and : <br> : <br> JOHNSON MATTHEY INC., : <br> Applicant for Intervention. : <br> : <br> v. : <br> : <br> SECURITY INSURANCE COMPANY : <br> OF HARTFORD, INC., : <br> : <br> Defendant. : <br> : | No. 03-cv-12409-JLT |

## AFFIDAVIT OF DAVID A. FIRN IN SUPPORT OF
## JOHNSON MATTHEY INC.'S MOTION TO INTERVENE

COMMONWEALTH OF PENNSYLVANIA  :
                                : ss.
COUNTY OF CHESTER               :

1. I am Associate General Counsel of Johnson Matthey Inc. ("JM"). As such, I am familiar with the dispute between the parties to this action and the facts set forth in my affidavit. Process Facilities, Inc., the Plaintiff in this action, and its related entities, PFI Construction Corporation, and PFI Design, P.C., are referred to herein collectively as "PFI."

2. JM retained PFI to perform the following professional services for JM's new bulk pharmaceutical manufacturing facility in West Deptford, New Jersey (the "Project"): by Purchase Order No. 52992, dated November 30, 1999, and Change Orders thereto, to design the Project; by Purchase Order No. 55375, dated June 28, 2000, and Change Orders thereto, to perform procurement services for the Project; by Purchase Order No. 56310, dated December 21,

PH2\776629.1

2000, and Change Orders thereto, to perform construction management services for the Project; and by Purchase Order No. 58019, dated October 12, 2001, and Change Orders thereto, to perform procurement services for the thermal oxidizer portion of the Project.

3. On or about August 22, 2000, PFI obtained a Professional Liability Policy for Design Professionals, Policy Number AEE703097 (the "Policy"), from Defendant, Security Insurance Company of Hartford ("Security"). A true and correct copy of the Policy is attached hereto as **Exhibit A**. The Policy, with endorsements, provided PFI with professional liability coverage of $10,000,000 per claim, and $10,000,000 in the aggregate. See Policy, Endorsement 37415 (Ex. A). The Policy was effective from August 22, 2000, through August 22, 2003. See Policy, Declarations Page (Ex. A). JM required PFI to obtain and maintain professional liability insurance as a prerequisite to PFI performing any work for JM on the Project.

4. During the course of the Project, PFI committed numerous errors, omissions, and negligent acts with respect to the "PROFESSIONAL SERVICES," as that term is defined in the Policy, PFI provided for the Project. Accordingly, on or about August 20, 2003, JM's counsel sent PFI's counsel a letter claiming approximately $7 million in damages due to PFI's errors, omissions, and negligence. See Letter from Richard H. Lowe, Esquire (JM's counsel) to Edward Kutchin (PFI's counsel), dated August 20, 2003 (attached hereto as **Exhibit B**). In addition to requesting that PFI report JM's claim to Security, JM's counsel also sent a copy of its letter to PFI directly to Security on August 20, 2003. It is my understanding that PFI immediately reported JM's claim to Security.

5. On or about October 17, 2003, Security wrote to PFI denying coverage for JM's claims against PFI and simultaneously filed a declaratory judgment action against PFI in the Superior Court of New Jersey (the "New Jersey Declaratory Judgment Action"). See Letter from

Albert J. Rabasca (Claim Supervisor, Security) to Daniel Mariani (PFI), dated October 17, 2003 (attached hereto as **Exhibit C**). PFI removed that action to the United States District Court for the District of New Jersey on November 17, 2003. Security stated that it was denying coverage because: (1) PFI failed to provide Security with the required notice under the terms of the Policy; (2) that JM's claim against PFI does not arise out of PFI's "Professional Services," as that term is defined in the Policy; and (3) JM's claims for indemnification were not covered under the Policy. See Letter from Albert J. Rabasca (Claim Supervisor, Security) to Daniel Mariani (PFI), dated October 17, 2003 (Ex. C).

6. On or about October 27, 2003, PFI's counsel wrote to Security, asserting that PFI provided adequate notice under the Policy and acknowledged that all of JM's claims against PFI arose out of PFI's performance of "Professional Services," as that term is defined in the Policy. See Letter from Edward Kutchin, Esq. to Albert Rabasca, dated October 27, 2003 (attached hereto as **Exhibit D**). In his letter, PFI's counsel also asserted that Security's denial of coverage of JM's claim constitutes an unfair claim settlement practice in violation of the Massachusetts Insurance Claims Practices Act (M.G.L. c. 176D) and the Massachusetts Consumer Protection Statute (M.G.L. c. 93A). See Letter from Edward Kutchin, Esq. to Albert Rabasca, dated October 27, 2003 (Ex. D). Accordingly, PFI commenced an action against Security in the Superior Court of Massachusetts, Suffolk County (the "Massachusetts Declaratory Judgment Action"), alleging that: (1) Security breached its obligations under the Policy; (2) Security violated the Massachusetts Insurance Claims Practices Act and Consumer Protection Statute; (3) PFI is entitled to specific performance by Security of its obligations under the Policy; (4) Security breached the covenant of good faith and fair dealing by denying coverage; and (5) PFI is entitled to a declaratory judgment determining the rights and obligations of PFI and Security

under the Policy. A copy of the Complaint filed by PFI in the Superior Court of Massachusetts is attached hereto as **Exhibit E**. On or about December 3, 2003, Security removed the Massachusetts Declaratory Judgment Action to this Court.

7. As early as December, 2002, PFI began asserting that it was having severe cash flow problems. Consistent with that, at a meeting in Boston on June 5, 2003, PFI acknowledged for the first time that it was financially unstable, that it would not be able to withstand the financial impact of having to pay the $1.1 million in funds JMI had paid PFI (specifically for PFI's subcontractors, but which PFI wrongfully kept for itself and refused JMI's demands to pay the money to the subcontractors), and could not afford to make any payment to JMI as a result of JMI's claims that went much beyond PFI's insurance deductible of $100,000.

8.  The nature and status of the dispute between PFI and Security has been a subject of numerous discussions I have had with Edward Kutchin, counsel for PFI. In the course of those discussions, PFI's counsel, on at least two occasions (November 14 and 26, 2003), has threatened that PFI might concede the insurance coverage issue with Security and might file for bankruptcy protection. PFI's counsel has also represented (on November 14, 2003) that PFI is in a precarious financial position in that the amount PFI owes its bank is more than its retained earnings and that security interests are attached to virtually all of its assets. Further, PFI has represented that it cannot afford to continue funding litigation against its subcontractors on the Project, let alone JM and Security, PFI's insurer.

_____
David A. Fim

Sworn to and subscribed before me
on this 6th day of February, 2004

_____
Notary Public

NOTARIAL SEAL
BARBARA H. STEIDLER, Notary Public
Wayne, Chester County
My Commission Expires Nov. 19, 2004

PH2\776629.1                                                    5

## CERTIFICATE OF SERVICE

I, Eric B. Goldberg, hereby certify that on February 6, 2004, I caused a true copy of the foregoing Affidavit of David A. Firn to be served by hand upon the following attorneys of record.

> Edward Kutchin, Esq.
> Kutchin & Rufo, P.C.
> 155 Federal Street
> 17th Floor
> Boston MA 02110-1727
> *Attorneys for Plaintiff*
> *Process Facilities, Inc.*
>
> Harvey Nosowitz, Esq.
> Palmer & Dodge, LLP
> 111 Huntington Avenue
> Boston, MA 02199
> *Attorneys for Defendant*
> *Security Insurance Company of Hartford, Inc.*

_____
Eric B. Goldberg